UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SAM WILLIAMS,                          )
                                       )
        Plaintiff,                     )
                                       )
    vs.                                )          Case No. 4:07CV01409 ERW
                                       )
FRANKLIN D. CHAMBERS, et al.,          )
                                       )
        Defendants.                    )

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff's Motion to Alter or Amend the Court's

September 23, 2009 Order [doc. #57].

I.    **BACKGROUND AND PROCEDURAL HISTORY**

On August 20, 2005, Jeffrey W. Williams ("Mr. Williams") died after an altercation with

various police officers alongside Interstate 44, near Rolla, Missouri.  As a result of this incident,

Sam Williams ("Plaintiff"), the father of Mr. Williams, filed a lawsuit against Franklin D.

Chambers, George W. Arnold, Aaron J. Pinson, Matthew Vogeler, and Phelps County, Missouri

(collectively, "Defendants").  In his Complaint, Plaintiff asserted 42 U.S.C. §§ 1983 and 1988

claims of unreasonable and excessive force, supplemental state law wrongful death claims, and

supplemental state law personal injury claims.

On March 30, 2009, Defendants filed a Motion for Summary Judgment [doc. #34].  On

September 23, 2009, this Court issued a Memorandum and Order [doc. #53], granting

Defendants' Motion for Summary Judgment, and dismissing all of Plaintiff's claims against

Defendants.  In that Order, the Court gave a lengthy recitation of the facts of this case, and

ultimately determined that there were no genuine issues of material fact. The Court concluded

that the force used against Mr. Williams by Defendants was objectively reasonable and did not

violate his constitutional rights. The Court also found that Defendants Chambers, Arnold, Pinson,

and Vogeler were entitled to official immunity against Plaintiff's state law claims, and, as a result,

concluded that Defendant Phelps County had no vicarious liability.

On October 2, 2009, Plaintiff filed the pending Motion to Alter or Amend the Court's

Order [doc. #57], arguing that the Court erroneously based its decision on a violation of Local

Rule 7-4.01(E). Plaintiff asserts that: he complied with the Local Rules; the Local Rule at issue is

ambiguous and allows for more than one interpretation; and he supplied the Court with many

facts which demonstrate the existence of genuine issues of material fact.

## II.     LEGAL STANDARD

Motions filed under Federal Rule of Civil Procedure 59(e) "serve a limited function of

correcting 'manifest errors of law or fact or to present newly discovered evidence.'" *Innovative*

*Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir.

1998) (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 413 (8th Cir. 1988)). "It is not

appropriate to use a Rule 59(e) motion to repeat arguments or to raise new arguments that could

have been made before judgment." *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*,

174 F.R.D. 444, 446 (E.D. Mo. 1997) (internal quotations omitted); *see also Innovative Home*

*Health Care*, 141 F.3d at 1286 ("Such motions cannot be used to introduce new evidence, tender

new legal theories, or raise arguments which could have been offered or raised prior to entry of

judgment."). Rather, "'Federal Rule of Civil Procedure 59(e) provides a means to support

reconsideration [by the court] of matters properly encompassed in a decision on the merits.

Under [R]ule 59(e), the court may consider issues previously before it, and generally may examine the correctness of the judgment itself.'" *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 620 (8th Cir. 2009) (quoting *Ray E. Friedman & Co. v. Jenkins*, 824 F.2d 657, 660 (8th Cir. 1987)) (first alteration in original). "[T]he Rule was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. N.H. Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982) (internal quotations and alterations omitted). "'A district court has broad discretion in determining whether to grant a motion to alter or amend judgment.'" *Global Network Techs., Inc. v. Reg'l Airport Auth. of Louisville & Jefferson County*, 122 F.3d 661, 665 (8th Cir. 1997) (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 413 (8th Cir. 1988)).

## III.    DISCUSSION

Much of Plaintiff's Motion to Alter or Amend is based on the Court's finding that "Plaintiffs failed to specifically controvert any of the facts listed in Defendants' Statement of Facts, and the Court will deem admitted each fact contained within Defendants' Joint Statement of Uncontroverted Material Facts for the purpose of the pending Motion for Summary Judgment." (Order, doc. #53, p.3). The Court begins by noting that it regrets using this language because it apparently gave Plaintiff the impression that Defendants' Motion for Summary Judgment was granted, and that Plaintiff's claims were dismissed, solely because this Court determined that Plaintiff failed to comply with the Local Rules. That is not what happened, and it is not what the Court intended to convey. In reality, the Court thoroughly reviewed and verified the veracity of the statements of facts submitted by the Parties, in addition to the exhibits which were cited in those statements of facts. The Court then spent numerous hours comparing the

different accounts of the events of August 20, 2005, including Plaintiff's account, as set forth in his Statement of Material Facts, ultimately concluding that what initially appeared to be conflicts or discrepancies could be easily reconciled. The Court believed that this reconciliation was reflected in its recitation of the background facts, but it is now clear that this was not the case. The Court will thus make an effort to further clarify its analysis in this Order. First, however, the Court must address Plaintiff's arguments regarding Local Rule 7-4.01(E).

## A.    COMPLIANCE WITH LOCAL RULE 7-4.01(E)

In its September 23, 2009 Order, this Court stated:

> In this case, Plaintiff filed a Statement of Material Facts [doc. #50], however he failed to identify which facts listed in Defendants' Joint Statement of Uncontroverted Material Facts [doc. #33] he contends are specifically controverted. First, with the exception of a few facts at the beginning, Plaintiff did not "note for all disputed facts the paragraph number from movant's listing of facts," as required by Local Rule 7-4.01(E). Second, many of the facts contained in Plaintiff's Statement of Material Facts are similar to or duplicative of the facts listed in Defendants' Joint Statement of Uncontroverted Material Facts. A fact cannot be considered controverted when both Parties assert that it is true. Because Plaintiff failed to specifically controvert any of the facts listed in Defendants' Statement of Facts, the Court will deem admitted each fact contained within Defendants' Joint Statement of Uncontroverted Material Facts for the purpose of the pending Motion for Summary Judgment.

Plaintiff now argues that he fully complied with Local Rule 7-4.01(E) and, alternatively, that the Rule is ambiguous and should not have resulted in such a harsh outcome.

Local Rule 7-4.01(E) provides:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of

> facts. All matters set forth in the statement of the movant shall be deemed admitted
> for purposes of summary judgment unless specifically controverted by the opposing
> party.

In this case, Defendants submitted a Joint Statement of Uncontroverted Material Facts, which met

the requirements of Local Rule 7-4.01(E). In response, Plaintiff filed a "Statement of Material

Facts," which was in a somewhat unusual format. Plaintiff began with specific admissions or

denials of a few of Defendants' facts, including the corresponding paragraph number. After

addressing about fifteen of Defendants' facts in this manner,[1] Plaintiff then began listing his own

facts, making no attempt to identify which facts were uncontroverted, which facts were allegedly

controverted, and which facts were completely new. Many of Plaintiff's facts were very similar to

Defendants' facts,[2] seemingly establishing that those facts were uncontroverted, although they

were not identified as such. Plaintiff also included some facts that were supposedly controverted,

although this was not immediately evident to the Court since there was no specific denial (just

"compare Defendants paragraph . . . "), and there was no explanation of how the two different

facts actually create a controversy. Finally, Plaintiff included some entirely new facts.[3]

---

[1]This is the manner of response that the Court is accustomed to seeing, and that is
generally the most helpful.

[2]For example, Defendants state that "Williams told Sergeant Arnold that his vehicle had
run out of gasoline and he had help coming from Springfield," (Defs.' Facts, doc. #33, p.4 ¶4),
while Plaintiff states that "Arnold stopped to offer assistance to Williams who stated that he had
run out of gas and was expecting assistance from Springfield." (Pl.'s Facts, doc. #46, p.5 ¶3). As
is apparent from this example, there are no substantive differences between the two statements
and they are included for the same purpose. However, because Plaintiff did not merely admit to
Defendants' fact, the Court was forced to examine the veracity of both statements and consolidate
them, instead of just being able to rely on Defendants' fact as written.

[3]It was not problematic to this Court that Plaintiff included new facts, although some of
these facts were irrelevant to the issues presented by Defendants' Motion for Summary Judgment,
and thus were not considered or included in the Court's recitation of the facts.

This Court determined that Plaintiff's Statement of Material Facts did not comply with Local Rule 7-4.01(E). That determination was largely based on the fact that, in the Court's opinion, Plaintiff did nothing to demonstrate that an actual controversy existed between his version of the facts and Defendants' version of the facts. The Court believed that merely advising it to compare one or more of Defendants' facts to one of Plaintiff's own facts, with no further explanation, was not sufficient to "specifically controvert any of the facts listed in Defendants' Statement of Facts." Local Rule 7-4.01(E). The Court also noted that the Local Rule required Plaintiff to set forth the controverted material facts, but Plaintiff set forth numerous facts which were similar to or duplicative of Defendants' facts, and which therefore could not be considered controverted.[4] Plaintiff's chosen method of responding to Defendants' Joint Statement of Uncontroverted Material Facts made it significantly more difficult for the Court to comb through all of the facts of this case, in order to determine whether there were any genuine issues of material fact. Considering that local rules such as Local Rule 7-4.01(E) are implemented in order to prevent district courts from having to "scour the record looking for factual disputes," this Court concluded that Plaintiff had violated the Rule. *Nw. Bank & Trust Co. v. First Illinois Nat'l Bank*, 354 F.3d 721, 725 (8th Cir. 2003).

---

[4]In his Motion to Alter or Amend, Plaintiff implies that his inclusion of additional facts in his Statement of Material Facts was one of the factors that led to the Court's conclusion that Plaintiff did not comply with the Local Rules. (Pl.'s Mtn., doc. #58, pp.4-5). This was not the case. The Court merely noted that Plaintiff's facts which merely repeat Defendants' facts obviously cannot be "controverted facts." Plaintiff's inclusion of these obviously uncontroverted facts made it more difficult for the Court to discern whether any genuine issues of material fact existed in this case. The Court was not commenting on Plaintiff's inclusion of new and non-repetitive facts. Rather, these facts were "included in the Court's analysis to the extent the facts are material," which is what Plaintiff argues is required. (Pl.'s Mtn., doc. #58, p.5 (quoting *Hunter v. Ramada Worldwide, Inc.*, 2005 WL 1490053 (E.D. Mo. June 23, 2005))).

Plaintiff makes persuasive arguments as to why this Court's interpretation of Local Rule 7-4.01(E) was too harsh. Additionally, Plaintiff cites to case law which suggests that Plaintiff's method of responding to Defendants' Joint Statement of Uncontroverted Material Facts, while certainly not ideal, *might* have been adequately in compliance with the Local Rules. *See, e.g.*, *Jenkins v. Winter*, 540 F.3d 742, 746-47 (8th Cir. 2008) (applying similar local rule from the United States District Court for the Western District of Missouri). *But see Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032-33 (8th Cir. 2007) (applying similar local rule from the United States District Court for the District of Iowa). However, the Court need not resolve the issue of whether Plaintiff's Statement of Material Facts complied with Local Rule 7-4.01(E) because the finding that Plaintiff violated the Rule was not essential to the Court's decision to grant Defendants' Motion for Summary Judgment.

Although the Court initially stated that it deemed each of Defendants' facts admitted, the Court did not merely accept all of those facts as true. Instead, the Court: 1) thoroughly reviewed the facts listed by both Plaintiff and Defendants; 2) ensured the veracity of those facts by reviewing the cited exhibits; 3) made any changes necessary in order to correctly and fairly present the facts; and 4) compiled both Parties' facts into one comprehensive narrative of the background facts relevant in this case. The Court incorporated many of Plaintiff's facts,[5] and

---

[5]Sections I and II of Plaintiff's Statement of Material Facts contain admissions of Defendants' facts, although the one objection or correction that the Plaintiff had (to Fact 9 in Section II) was adopted (see footnote 5 on page 8 of Court's Order). From Section III, the Court specifically included Facts 1-6 on page 20 of the Order and Facts 7-8, 12, and 14-17 on page 21 of the Order. From Section IV, the Court specifically included Facts 1-9 on page 22 of the Order. From Section V, the Court specifically included Facts 1, 3, and 4 on page 3 of the Order; Facts 7-13 on page 4; Facts 14-17, 29, and 30 on page 5; Facts 18-21, and 23 on page 6; Facts 22, 24-27, and 31-32 on page 7; Facts 34-37 and 44-53 on page 8; Facts 54-55, 57-58, and 60-64 on page 9; Facts 67-77 on page 10; Facts 78-81 and 83-86 on page 11; Facts 89-94 on page 12; and Fact 95

where apparent conflicts existed, the Court was able to reconcile them, thereby uncovering one set of facts that was supported by both Defendants' facts and Plaintiff's facts. Thus, despite Plaintiff's arguments to the contrary, although the Court did in fact find a violation of Local Rule 7-4.01(E), that finding had no effective impact on the facts that the Court considered in its decision to grant summary judgment.

In fact, excluding the Court's finding that Plaintiff failed to specifically controvert any of the facts listed in Defendants' Joint Statement of Uncontroverted Material Facts (quoted above), the Court only once relied on its determination that Plaintiff failed to properly respond to, and therefore admitted, each of Defendants' facts. This came in footnote 11, on pages 26 and 27 of the Court's Order, which Plaintiff has consistently cited and relied on throughout his Motion to Alter or Amend and his Reply Brief. In that footnote, the Court noted:

> Plaintiff repeatedly states that Mr. Williams did not resist or move after he was handcuffed, but the uncontroverted material facts of this case establish that he did. Plaintiff's failure to properly respond to Defendants' Joint Statement of Uncontroverted Material Facts meant that he admitted to various facts, including: "After he was placed in handcuffs, Williams continued to struggle to get away," and, "Williams then started attempting to get up." (Def.'s Facts, doc. #33, p.25 ¶¶ 169-170).

on page 14. From Section VI (renumbered), the Court specifically included: Facts 96-101 and 111 on page 12; Facts 102-110, 112-114, 120-121, 124-125, 127-130, and 132 on page 13; Facts 135-139 on page 14; Facts 141-142, 144-146, 156, 169, 174-175, and 184 on page 15; Facts 151-154, 158-160, 162-163, 165, 170, and 173 on page 16; Facts 115-117, 171, 189-190, 193, and 195 on page 17; and Facts 176-178 and 180-183 on page 19. From Section VII, the Court specifically included: Facts 197-198, 200, 202-203, 205-212, and 214-218 on page 17, and Facts 219-221 and 223-234 on page 18. From Section IX (renumbered), the Court specifically included: Facts 1-4 and 29 on page 20, and Facts 33 and 34 on page 21. From Section XI (renumbered), the Court specifically included Facts 7-10 on page 19. The Court elected not to include the other facts listed by Plaintiff because they were either repetitive, irrelevant, implied, or contradicted (see Section III.B. below).

However, even if the Court entirely deleted this footnote from the Order, the outcome would remain the same. This is because the Court did not conclude that Mr. Williams resisted or moved after he was handcuffed based on Defendants' facts alone; rather, it was after consulting the depositions and other exhibits submitted by both Parties, all of which clearly supported this conclusion.[6]

Because this Court recognizes that it is possible that Plaintiff's Statement of Material Facts was actually in compliance with Local Rule 7-4.01(E), the Court will amend its September

---

[6]Plaintiff apparently believes that this Court found that Mr. Williams was continuously trying to get away and resisting after he was handcuffed. For example, in his Motion to Alter or Amend, Plaintiff stated, "Defendants have used this testimony to assert, in a global and overreaching sense, that after Williams was handcuffed while prone - a period of at least 13 minutes before he was sat up by many accounts - he continuously struggled with the officers." (Pl.'s Memo. in Support of Mtn., doc. #58, p.7). This is not what the Court found. Rather, in the September 23, 2009 Order, the Court set out in detail the events which followed the handcuffing. Included in the Court's recitation were the following statements:

"Immediately after Mr. Williams was handcuffed, he was not struggling and he was not trying to get up."

"Mr. Prestage poured water across Mr. Williams' eyes to wash his face. Mr. Williams was not struggling during this process; he was on the ground and wasn't moving."

"Mr. Williams began to struggle again and then he started to attempt to get up. Mr. Prestage told the officers, 'He's trying to get up, he's trying to get up.'"

"Once Deputy Vogeler and Deputy Pinson took over for the troopers, Mr. Prestage took his hands off Mr. Williams and got up. At this point, Mr. Williams was not resisting and was not trying to get up."

"While restraining Mr. Williams at his feet and lower body, Deputy Pinson felt Mr. Williams moving his legs, and believed that Mr. Williams might be struggling."

(Order, doc. #53, pp.13-16). It is clear from these statements that the Court found that Mr. Williams struggled or attempted to get up several times after he was handcuffed, but that he was also complying and not resisting at other times. This dispute is also addressed more in the subsequent section.

23, 2009 Order so that all references to that Rule and any violations thereof will be omitted.

Accordingly, the Court will remove the first two paragraphs in the "Background Facts" section on

pages 2-3 of the Order, and footnote 11, on pages 26-27.

### B.     PLAINTIFF'S "CONTROVERTED" FACTS

Plaintiff assumes that this Court entirely ignored the "compare" parenthetical references

that he claims complied with Local Rule 7-4.01(E), but that was not the case. Rather, this Court

examined those references to the extent possible.[7] In an attempt to demonstrate to Plaintiff that

his factual arguments were in fact fully considered, the Court will closely examine each of

Defendants' facts that Plaintiff cited in his "compare" parentheticals. The Court will analyze

whether any of Plaintiff's facts actually controverts Defendants' facts, and if any controversies do

exist, the Court will discuss why they are not material.

####     1.     *Defendants' Fact 108*[8]

Defendants' Fact 108 was included on page 9 of the Court's Order, and states, "The

pepper spray had seemingly no effect on Williams." Defendant cited four exhibits to support this

fact, including the depositions of both Lieutenant Chambers and Sergeant Arnold. Plaintiff claims

that this fact is controverted by his Fact 125, which states, "Prestage saw that Williams' eyes were

---

[7]Many of the facts that were followed by a "compare" parenthetical either misstated the evidence or did not create an obvious contradiction. Plaintiff did not provide any kind of explanation as to why his facts actually dispute the facts cited in the "compare" parentheticals. Thus, the Court was left with no option but to guess at why Plaintiff thought that a dispute existed. This proved to be a rather difficult task. The difficulty is examined more closely, and is set forth in more detail, in the paragraphs that follow.

[8]Unless otherwise specified, each fact discussed is from Section III of Defendants' Joint Statement of Uncontroverted Material Facts or from Sections V-VII (numbered consecutively) of Plaintiff's Statement of Material Facts.

impaired, so he poured water in Williams' eyes." Plaintiff cited the deposition testimony of Mr. Prestage to support his fact.

Plaintiff's Fact 125 does not controvert Defendants' Fact 108 because the statements refer to two different points in time. Defendants' fact refers to Mr. Williams' lack of reaction to the pepper spray immediately after Lieutenant Chambers used the OC spray, which was in the midst of the struggle, before they were able to get handcuffs on Mr. Williams. Plaintiff's fact, on the other hand, refers to an observation of Mr. Prestage after Mr. Williams was lying on the ground in handcuffs. Mr. Prestage was not present at the scene when the OC spray was used, so he could not comment on the effect that it had at that time. Additionally, Mr. Prestage was clear in his deposition that he did not know if Mr. Williams was experiencing any pain from the OC spray:

> Since he wasn't moving, I moved around to his head area and asked him to turn his head over to the side so I can put some water in his eyes because his eyes were impaired also. He had mace - he had been, you know, maced also in the face, and so I was going to get the - try to alleviate some of his pain if he was in any. I didn't know.

(Prestage Depo, Pl.'s Ex. 9, doc. #47-12, p.18 l.25-p.19 l.7).

2. *Defendants' Fact 117*

Defendants' Fact 117 was included on page 10 of the Court's Order, and states, "The pepper spray again appeared to have no effect on Williams." Defendant cited four exhibits to support this fact, including the depositions of both Lieutenant Chambers and Sergeant Arnold. Plaintiff claims that this fact is controverted by his Fact 125, which states, "Prestage saw that Williams' eyes were impaired, so he poured water in Williams' eyes." Plaintiff cited the deposition testimony of Mr. Prestage to support his fact.

Plaintiff's Fact 125 does not controvert Defendants' Fact 117 because, again, the statements refer to two different points in time. Defendants' fact refers to Mr. Williams' lack of reaction to the OC spray after it was used a second time, still before he was handcuffed. As set forth above, Plaintiff's fact, on the other hand, refers to an observation of Mr. Prestage after Mr. Williams was lying on the ground in handcuffs. The preceding analysis regarding Defendants' Fact 108 applies with respect to Defendants' Fact 117 and the Court finds no controversy.

    3.  *Defendants' Fact 169*

Defendants' Fact 169 states, "After he was placed in handcuffs, Williams continued to struggle to get away." Plaintiff argues that this Fact is controverted by his Facts 102, 103, 120, 121, 124, 129, 131, 133, 153, 162, 170, and 172. This Court disagrees with Plaintiff for several reasons.

First, it is not entirely clear that the meaning that Plaintiff has discerned from Defendants' Fact 169 is entirely in line with what Defendants actually meant. As briefly discussed above in Footnote 6, Plaintiff apparently believes that Defendants are asserting that after Mr. Williams was placed in handcuffs, he was constantly struggling and trying to get away. The Court interprets Defendants' statement to mean that Mr. Williams was not entirely submissive after he was placed in handcuffs; rather, there were periods of time during which he was calm and submissive, and there were periods of time during which he was struggling with the officers.

Regardless, this distinction is immaterial because the Court did not actually include Defendants' Fact 169 in its factual findings. Actually, the Court instead included all of the facts which Plaintiff claims controvert Fact 169 in its recitation of the facts in the September 23, 2009 Order:

- Plaintiff's Fact 102: "Williams was not trying to get up at that time" and Plaintiff's Fact 103: "Once Williams was handcuffed, he stopped struggling"; included in Court's Order, page 13: "Immediately after Mr. Williams was handcuffed, he was not struggling and he was not trying to get up."

- Plaintiff's Fact 120: "After Prestage put the water in Arnold's eyes, Williams was not struggling," Plaintiff's Fact 121: "At that time, Williams - still lying on the ground - was not moving," and Plaintiff's Fact 124: "Williams was not moving"; included in Court's Order, page 13: "The troopers asked Mr. Prestage if he or his wife had water, Mr. Prestage yelled to his wife, and she brought some no more than one minute later. . . . Mr. Williams was not struggling during this process; he was on the ground and wasn't moving."

- Plaintiff's Fact 129: "After Prestage resituated himself, he was able to keep Williams down and Williams did not try to get up anymore," Plaintiff's Fact 131: "During those few minutes, Mr. Williams was just lying there," and Plaintiff's Fact 133: "During those few minutes between Prestage resituating himself and his hearing the sirens, Williams did not appear to be resisting or trying to get up"; included in Court's Order, pages 13-14: "Mr. Prestage went back to Mr. Williams' side and put his hand on Mr. Williams' back to keep him from getting up. Mr. Prestage stayed there for a few minutes. . . . Mr. Williams still had freedom of movement while he was being restrained, but he did not try to get up anymore."

- Plaintiff's Fact 153: "At that point, when Prestage got up, Williams was not resisting and was not trying to get up"; included in Court's Order, page 16: "Once

Deputy Vogeler and Deputy Pinson took over for the troopers, Mr. Prestage took his hands off Mr. Williams and got up. At this point, Mr. Williams was not resisting and was not trying to get up."

- Plaintiff's Fact 162: "Pinson does not know if Williams was struggling to breathe at this point"; included in Court's Order, page 16: "In response to a question about whether Mr. Williams might have neem struggling to breathe, Deputy Pinson responded that he did not know."

- Plaintiff's Fact 170: "Around the time that Pinson resituated to Williams' upper body, Vogeler noted that Williams was no longer moving"; included in Court's Order, pages 16-17: "Deputy Pinson resituated to Mr. Williams' upper body and Deputy Vogeler observed that Mr. Williams had stopped moving."

- Plaintiff's Fact 172: "Vogeler does not recall seeing Williams move at any time after Prestage left the scene"; not specifically included, but there was no mention of Deputy Vogeler seeing any movement after Mr. Prestage left, partially because he left Mr. Williams' side to interview Mr. Prestage.

Thus, even if Defendants were claiming that Mr. Williams was constantly struggling after being handcuffed, the Court clearly did not adopt this version of the facts. Rather, with respect to Mr. Williams' movements after being handcuffed, the Court adopted the facts submitted by Plaintiff. These were the same facts that the Court relied on in determining that the officers did not use unreasonable or excessive force against Mr. Williams.

4.      *Defendants' Fact 170*

Defendants' Fact 170 states, "Williams then started attempting to get up," and was included on page 13 of the Court's Order ("Mr. Williams began to struggle again and then he started to attempt to get up."). Defendant cited the deposition of Mr. Prestage to support this fact. Plaintiff claims that this fact is controverted by his Fact 102, which states, "Williams was not trying to get up at that time," and by his Fact 103, which states, "Once Williams was handcuffed, he stopped struggling." Plaintiff also cited the deposition of Mr. Prestage to support both of these facts.

Neither of Plaintiff's facts controvert Defendants' Fact 170, because each of these three facts describe different periods of time. Both of Plaintiff's facts come from Mr. Prestage's description of Mr. Williams' demeanor immediately after he was placed in handcuffs, while Mr. Prestage's wife was getting water. Defendants' Fact 170, however, comes from Mr. Prestage's explanation of how Mr. Williams, who had been still and compliant, began trying to get up. Mr. Prestage was both thorough and precise in his deposition, and did not contradict himself in describing Mr. Williams' movements after he was handcuffed. Thus, these three statements from Mr. Prestage's deposition do not create a genuine issue of material fact.

5.      *Defendants' Facts 175 and 188*

Defendants' Fact 175 states, "Williams was coherent and talking," and Defedants' Fact 188 states, "Williams was talking." These facts were collectively included on page 13 of the Court's Order. Plaintiff claims that these facts are controverted by his Facts 175, 184-187, and 190.

Defendants' Facts 175 and 188 were used to describe Mr. Williams' condition after he tried to get up, but before Deputy Vogeler and Deputy Pinson arrived to help. Many of Plaintiff's facts are based on observations or statements made by witnesses regarding events that occurred *after* Deputy Vogeler and Deputy Pinson had arrived at the scene, and thus cannot be used to controvert Defendants' facts. For example, Plaintiff's Facts 175 and 184 are both based on the same portion of Lieutenant Chambers' deposition, in which he specifies that he is discussing events that occurred while Deputy Vogeler and Deputy Pinson were present. Additionally, some of Plaintiff's cited facts are actually based on observations of these deputies (Plaintiff's Facts 185, 186, and 190), and clearly cannot controvert a fact regarding conditions before they arrived. Finally, Plaintiff's Fact 187, which states that "Arnold never heard Williams speak after he was handcuffed," does not actually controvert the fact that Mr. Williams was coherent and talking shortly after he was handcuffed. Sergeant Arnold was at Mr. Williams' feet during this time and may not have been able to hear him speaking, especially with the noise of the passing traffic. Considering the fact that even Plaintiff admitted that Mr. Prestage, who was closer to Mr. Williams' face, heard him talking during this time (see Plaintiff's Fact 108), the Court finds that Defendants' Facts 175 and 188 are uncontroverted.

6. *Defendants' Fact 176*

Defendants' Fact 176 states, "After handcuffs were placed on Williams, Sergeant Arnold still considered Williams to be an immediate threat." Defendants cited the deposition testimony of Sergeant Arnold to support this fact. Plaintiff claims that this fact is controverted by his Facts 114, 122, 156, 217, and 218. Plaintiff cited various exhibits to support these facts, including the deposition testimony of Sergeant Arnold.

16

Plaintiff's Fact 114 states, "While Arnold still considered Williams an immediate threat to him once the handcuffs were applied, he did not consider Williams an immediate threat to the public." The Court found Plaintiff's fact to be a more accurate summary of Sergeant Arnold's deposition testimony than Defendants' fact, and thus included this fact in the recitation of the facts on page 13: "Sergeant Arnold still considered Mr. Williams to be an immediate threat to him, but he did not consider Mr. Williams to be an immediate threat to the public." Because both facts were based on the same deposition testimony and the Court elected to use Plaintiff's Fact 114 because it was more accurate, the Court cannot conclude that there is a genuine issue of material fact regarding the threat level perceived by Sergeant Arnold.

Plaintiff's remaining four facts also do not controvert the Court's statement regarding Sergeant Arnold's perception of threat. Three of these facts (Facts 122, 217, and 218) are about communications made over the radio to emergency personnel responding to the scene. These facts do not contradict Sergeant Arnold's observations, rather they show that the emergency personnel were kept apprised of the events that were occurring alongside the highway, so they knew what to expect upon arrival. Additionally, Fact 156 states that, "When Pinson replaced Arnold restraining Williams, Arnold walked away from the scene to decontaminate his eyes." This fact in no way shows that Sergeant Arnold thought that Mr. Williams no longer posed a threat; rather, the fact that he waited to be relieved by another officer even though he was in pain from the OC spray suggests just the opposite.

       7.    *Defendants' Fact 177*

Defendants' Fact 177 states, "Based on his training, Sergeant Arnold tried to maintain control of Williams because he still considered Williams to be a threat." Plaintiff claims that this

17

fact is controverted by his Fact 114. Both Plaintiff and Defendants cited Sergeant Arnold's deposition testimony to support their facts. Again, the Court found that Plaintiff's fact more accurately depicted Sergeant Arnold's testimony. The Court thus included Plaintiff's Fact 114 in its recitation of the facts, and finds that there is no genuine issue of material fact.

<ol start="8">
<li>*Defendants' Fact 178*</li>
</ol>

Defendants' Fact 178 was included on page 13 of the Court's Order, and states, "Sergeant Arnold was concerned that Williams could have flipped over and kicked the troopers." Plaintiff claims that this fact is controverted by his Fact 127, which states, "Prestage knew that Williams could not get up from his position with hands cuffed behind his back and lying on his stomach." Plaintiff's fact does not controvert Defendants' fact because the facts set forth the beliefs and thoughts of two different people. The fact that Mr. Prestage believed one thing does not mean that Sergeant Arnold could not believe something else. Moreover, Plaintiff's fact says that Mr. Prestage knew that Mr. Williams could not get up - it doesn't say anything about whether he was able to flip over.

<ol start="9">
<li>*Defendants' Fact 179*</li>
</ol>

Defendants' Fact 179 was included on page 13 of the Court's Order, and states, "After he was placed in handcuffs, [Lieutenant] Chambers restrained Williams' upper body area." Plaintiff claims that this fact is controverted by his Fact 93, which states, "When Prestage approached, before any handcuffing was done, Chambers was around Wiliams' upper body trying to get his arms." The Court is unable to discern how Plaintiff's Fact 93, which includes information about the situation before Mr. Williams was handcuffed, could even begin to dispute Defendants' Fact 179, which is about the situation after Mr. Williams was handcuffed.

### 10. *Defendants' Fact 181*

Defendants' Fact 181 states, "After he was handcuffed, Prestage never put his full weight on Williams." Plaintiff claims that this fact is controverted by his Facts 143 and 144. This factual dispute was addressed and resolved by the Court on page 15 and in footnote 7 of the September 23, 2009 Order, and need not be discussed a second time.

### 11. *Defendants' Fact 182*

Defendants' Fact 182 was included on page 14 of the Court's Order, and states, "Williams had freedom of movement while Prestage was helping restrain him." Plaintiff claims that this fact is controverted by his Facts 109, 110, 142, 143, 144, and 150. All of Plaintiff's facts, including Plaintiff's Fact 143 (which this Court determined to be false in footnote 7 of the Order), are about Lieutenant Chambers, Sergeant Arnold, and Mr. Prestage holding Mr. Williams down. It is not inconsistent to say that a person had freedom of movement while he was restrained and that the person was being held down. In fact, "restrained" and "held down" are essentially the same thing. Thus, the Court does not believe that any of the facts listed by Plaintiff actually controverts Defendants' Fact 182.

### 12. *Defendants' Fact 183*

Defendant's Fact 183 was included on pages 13-14 of the Court's Order, and states, "After he was handcuffed, Sergeant Arnold restrained Williams' legs and ankles for a short period, exerting just enough pressure to keep them from coming up." Plaintiff argues that this fact is controverted by his Facts 138, 142, 143, 147, 149, 150, and 156.

Many of Plaintiff's facts are based on observations that Sergeant Arnold was holding Mr. Williams' legs down. The Court fails to see the distinction between holding legs down and

restraining legs with just enough pressure to keep them from coming up. Thus, the observations included in Plaintiff's Facts 138, 142, 147, and 150 do not controvert Defendants' Fact 183. The Court also fails to see a discrepancy between Defendants' fact and Plaintiff's Facts 149 and 156. Fact 149 states, "By Pinson's account, approximately 1-2 minutes elapsed between his exiting his vehicle and his relieving Arnold." This has nothing to do with whether Sergeant Arnold was holding Mr. Williams' legs down, or with how much pressure he was using. Plaintiff's Fact 156 states, "When Pinson replaced Arnold restraining Williams, Arnold walked away from the scene to decontaminate his eyes." This fact also has nothing to do with Sergeant Arnold's method of restraining Mr. Williams. Finally, Plaintiff's Fact 143 was determined to be false in footnote 7 of this Court's Order. Thus, Defendants' Fact 183 is not controverted.

13. *Defendants' Facts 184-187*

Defendants' Facts 184-187 (combined) read, "Lieutenant Chambers knees were not up on Williams back. Lieutenant Chambers knee was not on Williams back, but just leaning against him. Lieutenant Chambers knee was along the side of Williams' back. While Lieutenant Chambers' knee was along the side of Williams' back, Williams was thrashing and squirming around, and trying to get free." Plaintiff claims that these facts are controverted by his Facts 87, 88, 143, and 167. In the recitation of the facts on page 11 of the September 23, 2009 Order, this Court stated: "[Lieutenant Chambers] had one of his knees alongside Mr. Williams' back, leaning into the side. He testified that his knee was not on the ground, but it was not actually up on Mr. Williams' back either. Mr. Williams continued to move uncontrollably and continued to resist, even after he was

lying prone to the ground."[9]  These events took place before Mr. Prestage arrived, and before the officers were able to place handcuffs on Mr. Williams.

Defendants' Facts 184-187 and Plaintiff's Facts 87 and 88 were all based on the same portion of Lieutenant Chambers' deposition testimony.  The Court was able to use this portion of testimony to resolve the conflicts between Defendants' facts and Plaintiff's facts, and set forth an unbiased account of Lieutenant Chambers' recollections regarding the position of his knee.  Next, Plaintiff's Fact 143 states, "Chambers, Arnold, and Prestage were actually on top of Williams when Pinson got there, all appearing to try to hold Williams down."  The factual accuracy of this statement was called into question in footnote 7 on page 15 of the Court's Order.  Additionally, this fact does not controvert Defendants' Facts 184-187 because Plaintiff's fact refers to a much later point in time, when Mr. Prestage and Deputy Pinson are both present.  Finally, Plaintiff's Fact 167 states, "During that time, in terms of weight on Williams' upper body, Chambers had a knee alongside Williams' back, keeping him still."  Not only does it appear that this fact addresses a later point in time than Defendants' Facts 184-187, but the knee placement discussed in this fact is actually consistent with that discussed in Defendants' facts.

14.    *Defendants' Fact 189*

Defendants' Fact 189 states, "[Lieutenant] Chambers interpreted Williams' continued struggle after he was handcuffed as an attempt to escape."  Plaintiff claims that this fact is controverted by his Facts 153, 170, and 172.  The Court did not actually include Defendants' Fact 189 in its recitation of the facts, and also did not consider this fact in granting summary judgment.

---

[9]The Court notes that, in the Order, it erroneously stated that it was Sergeant Arnold who had his knee alongside Mr. Williams' back.  It was in fact Lieutenant Chambers who was in this position.

Thus, it is irrelevant whether this fact is controverted because it was not material (i.e., not necessary to the Court's determination). Regardless, each of Plaintiff's facts discuss various times when Mr. Williams was not struggling with the officers; this does not discredit Defendants' assertion that, during those times when Mr. Williams was struggling, Lieutenant Chambers thought that he was trying to escape.

15. *Defendants' Fact 192*

Defendants' Fact 192 was included on page 14 of the Court's Order, and states, "When Deputy Vogeler first drove by the scene, he noted Williams was struggling with the two troopers." Plaintiff claims that this fact is controverted by his Fact 138, which states, "At that time, from the other side of the highway, it appeared to Vogeler that Arnold was near Williams' legs, holding them down." The Court finds that these facts do not controvert one another because Sergeant Arnold's position relative to Mr. Williams' body is irrelevant to whether Mr. Williams was still struggling with the officers when Deputy Vogeler drove by.

16. *Defendants' Fact 193*

Defendants' Fact 193 states, "After arriving at the scene and leaving his car, Deputy Vogeler noted that Williams was still moving his legs and feet." This fact was included on page 14 of the Court's Order. Plaintiff asserts that this fact is controverted by his Facts 141-143, 153, 170, and 172.

Plaintiff's Facts 141-143 all include Deputy Pinson's observations about the location of the other officers with respect to Mr. Williams, when Deputy Pinson arrived at the scene. These observations have nothing to do with, nor do they dispute, Deputy Vogeler's observations regarding Mr. Williams' movements. Plaintiff's Facts 153, 170, and 172 all set forth information

about Mr. Williams' movements after Deputy Pinson and Deputy Vogeler took over for the other officers. These facts do not discredit Deputy Vogeler's observations immediately upon arriving at the scene. In a case such as this one, in which events are quickly happening and the circumstances are constantly changing, it is important to maintain an understanding of the time line. Plaintiff has failed to do so with many of his "compare" parentheticals.

17.    *Defendants' Facts 194 and 195*

Defendants' Facts 194 and 195 (combined) read, "After the arrival of Deputy Vogeler, Williams continued to attempt to get away from the officers by inching along the ground. After the arrival of Deputy Vogeler, Williams continued to squirm on the ground while handcuffed." These facts were included on pages 14-15 of the Court's Order: "After exiting his vehicle, Deputy Vogeler noted that Mr. Williams was still moving his legs and feet and squirming on the ground while handcuffed, attempting to get away from the officers by inching along the ground." Plaintiff claims that these facts are controverted by his Facts 153, 170, and 172.

Again, Plaintiff's facts and Defendants' facts refer to different points in time. Defendants' facts clearly discuss the situation immediately after Deputy Vogeler arrived at the scene. Plaintiff's Fact 153 (which states, "At that point, when Prestage got up, Williams was not resisting and was not trying to get up") clearly and specifically refers to the situation when Mr. Prestage got up from Mr. Williams' side, which was not until after Deputy Pinson had relieved Sergeant Arnold and Deputy Vogeler had relieved Lieutenant Chambers. Plaintiff's Facts 170 ("Around the time that Pinson resituated to Williams' upper body, Vogeler noted that Williams was no longer moving") and 172 ("Vogeler does not recall seeing Williams move at any time after

23

Prestage left the scene") both refer to events that occurred even later than when Mr. Prestage got up from Mr. Williams' side. Thus, there is no genuine issue of material fact.

18.    *Defendants' Fact 196*

Defendants' Fact 196 states, "At this point in the encounter, Lieutenant Chambers continued to restrain Williams' upper body with a lesser amount of force than he previously exerted in order to ensure Williams did not leave the scene of the arrest." Plaintiff argues that this fact is controverted by his Facts 142, 143, 166, and 167.

None of Plaintiff's facts actually controverts Defendants' Fact 196. Plaintiff's Fact 142 states, "When Pinson approached the scene, he noted that Chambers, Arnold and Prestage were holding Williams down." Defendants' fact does not assert that Lieutenant Chambers wasn't holding Mr. Williams down; rather, it merely asserts that Lieutenant Chambers was doing so with a lesser amount of force. Plaintiff's Fact 143 was established to be incorrect in footnote 7, on page 15 of the Court's Order. Plaintiff's Fact 166 states, "During that time, Chambers was still holding Williams' upper body down with both of his hands." Again, Defendants' fact does not assert that Lieutenant Chambers was not holding Mr. Williams down with his hands, so Plaintiff's Fact 166 does not conflict with Defendants' Fact 196. Finally, Plaintiff's Fact 167 states, "During that time, in terms of weight on Williams' upper body, Chambers had a knee alongside Williams' back, keeping him still." This fact addresses the placement of Lieutenant Chambers' knee, which was not actually on Mr. Williams. Contrary to the first portion of Plaintiff's fact, it does not discuss the amount of pressure that Lieutenant Chambers was exerting on Mr. Williams.

19. *Defendants' Fact 201*

Defendants' Fact 201 was included on page 16 of the Court's Order, and states, "Although Williams was handcuffed, Deputy Pinson considered him to be an immediate threat at this point." Defendants cited Deputy Pinson's deposition testimony to support this fact. Plaintiff claims that this fact is controverted by his Facts 173, 189, and 193.

Plaintiff's Fact 173 does not controvert Defendants' fact because it discusses Deputy Vogeler's perception of threat, while Defendants' fact addresses Deputy Pinson's perception of threat. There is no controversy because Deputy Vogeler's beliefs cannot be used to dispute the existence of Deputy Pinson's beliefs. Plaintiff's Facts 189 and 193 both address Mr. Williams' behavior and physical state well after Deputy Pinson had concluded that he presented an immediate threat. Events occurring after a conclusion has been made cannot dispute the fact that the conclusion, reasonable or not, was actually made. Thus, Defendants' Fact 201 is not controverted.

20. *Defendants' Fact 202*

Defendants' Fact 202 was included on page 16 of the Court's Order, and states, "Based on his past experience and training, Deputy Pinson did not believe a handcuffed suspect was helpless." Plaintiff argues that this fact is controverted by his Facts 189 and 193.

Plaintiff's facts do not controvert Defendants' fact. Defendants' fact is a broad statement regarding Deputy Pinson's belief that generally handcuffed suspects are not helpless. The fact does not address Mr. Williams personally, and it does not assert that Mr. Williams particularly was not helpless. The fact was merely meant to reflect Deputy Pinson's beliefs, right or wrong, in

a generic fashion. Thus, Plaintiff's Facts 189 and 193, which address Mr. Williams' particular behavior and physical state, do not create a controversy.

21.    *Defendants' Fact 203*

Defendants' Fact 203 was included on page 16 of the Court's Order, and states, "While restraining Williams at his feet and lower body, Deputy Pinson felt Williams was moving his legs and believed Williams might be struggling." Plaintiff asserts that his Fact 162 ("Pinson does not know if Williams was struggling to breathe at this point") controverts Defendants' fact. The Court disagrees. Not only did the Court actually include Plaintiff's Fact 162 in its Order (on page 16), but that fact is entirely consistent with Defendants' fact. It is not inconsistent to say that Deputy Pinson felt Mr. Williams moving, that he thought that Mr. Williams might be struggling, and that he wasn't sure if Mr. Williams could have been struggling to breathe at that point. These facts are compatible and do not create a genuine issue of material fact.

22.    *Defendants' Facts 215 and 216*

Defendants' Facts 215 and 216 (combined) read, "Due to the physical nature of the struggle and because Williams' behavior indicated to Lieutenant Chambers the likelihood of recent drug use, he had requested an ambulance be sent to check on Williams and assist with the decontamination of pepper spray. Lieutenant Chambers radioed and asked the ambulance to be expedited." These facts were included on page 17 of the Court's Order. Plaintiff asserts that these facts are controverted by his Fact 218, which states, "This occurred before the request by Chambers for the ambulance to expedite." "This" presumably refers back to the previous fact, which discusses a call from dispatch to the paramedics, informing them that the altercation was over.

26

The Court is unable to discern how Plaintiff's fact could possibly dispute either of Defendants' facts. All three of these facts are consistent with one another, and with the other facts in this case: during the struggle, Lieutenant Chambers requested an ambulance; the officers were later able to handcuff Mr. Williams with the help of Mr. Prestage; the altercation ended; and when Mr. Williams became unresponsive, Lieutenant Chambers requested that the ambulance be expedited. There are no genuine issues of material fact.

23. *Defendants' Fact 218*

Defendants' Fact 218 was included on page 17 of the Court's Order, and states, "Williams'[] upper body was leaned against [Lieutenant] Chambers' knee for support." Plaintiff argues that this fact is controverted by his Fact 219, which states, "When Baker arrived at the scene, Williams' hands were cuffed behind his back and he was leaning against a guardrail." This fact was also included in the Court's Order, on page 18.

The Court notes that it is possible that these two facts do not conflict with one another, because Mr. Williams could have initially been leaned against Lieutenant Chambers, and then subsequently leaned against the guardrail. However, to the extent that there is a dispute between the two facts, it is not material because in considering Defendants' Motion for Summary Judgment, the Court did not consider the placement of Mr. Williams after he was sat up by the officers. Thus, there is no genuine issue of material fact.

24. *Defendants' Fact 222*

Defendants' Fact 222 states, "Almost immediately when Williams was sat upright by the officers, the ambulance and medical crew arrived," and was included on page 17 of the Court's Order. Plaintiff claims that this fact is controverted by his Facts 211, 212, and 214. This Court

disagrees. First, Plaintiff's Facts 211 and 212 discuss Lieutenant Chambers' two requests for an ambulance, and do nothing to question when the ambulance and medical crew arrived at the scene. Plaintiff's Fact 214 states, "A short time after, at 6:45 PM, the ambulance arrived." The actual arrival time of the ambulance does not dispute the fact that the ambulance arrived shortly after the officers sat Mr. Williams upright. Thus, there is no controversy with respect to these facts.

       25.   *Defendants' Fact 223*

Defendants' Fact 223 states, "Right after the emergency medical personnel got to Williams they determined he was not breathing," and was included on page 18 of the Court's Order. Plaintiff claims that this fact is controverted by his Facts 5, 6, 7, and 8, from Section VIII of his Statement of Material Facts. Combined, these facts read,

> At that time Chambers told Becker that the troopers had tried to arrest a subject, he was in distress, had quit breathing, and was en route to the hospital. According to MSHP CAD log records, Becker was notified of the incident involving Williams at 6:40 PM. At 6:44 PM, based on the MSHP CAD log, Becker asked to have Chambers call him when the scene stabilized either because he overheard traffic on the radio or Chambers had called him and told him things had deteriorated. It was apparent to Becker based on MSHP CAD log that the situation was critical at 6:44 PM.

Although it is not entirely clear how exactly Plaintiff believes that these facts controvert Defendants' fact, the Court assumes that Plaintiff is attempting to suggest that Lieutenant Chambers called Captain Randy Becker at 6:40 p.m., and told him that Mr. Williams was in distress, had stopped breathing, and was on the way to the hospital. This is factually impossible, however, because even Plaintiff agrees that the ambulance did not arrive at the scene until 6:45 p.m. Alternatively, Plaintiff might be suggesting that Mr. Williams was not breathing by 6:44

p.m., before the ambulance arrived, because Captain Becker was able to tell that the situation was "critical" at that time. This argument is also unsuccessful because the term "critical" is not synonymous with "not breathing." The Court is unable to imagine any further arguments Plaintiff could make as to how his facts controvert Defendants' Fact 223.

      26.    *Defendants' Facts 224 and 227*

Defendants' Fact 224 states, "At no time prior to the arrival of the ambulance did anyone say or suspect Williams was not breathing." Defendants' Fact 227 states, "At no point prior to the arrival of the ambulance was Lieutenant Chambers aware Williams was not breathing." Fact 224 was included on page 18 of the Court's Order. Plaintiff asserts that these facts are controverted by his Facts 5, 6, 7, and 8, from Section VIII of his Statement of Material Facts (set forth in full in the preceding section). Again, the Court is unable to create an argument that would support Plaintiff's argument that these facts controvert Defendants' Facts 224 and 227.

Additionally, Plaintiff asserts that his Facts 178, 191, 192, 198, 199, and 200 controvert Defendants' Fact 224, and suggest that Mr. Williams had stopped breathing before the ambulance arrived. This Court disagrees. Fact 178 states, "Some time before Chambers calls for the ambulance, Williams stated, "help me, help me." Merely asking for help does not mean that a person is unable to breathe. Facts 191 and 192 (combined) read, "At this point, Pinson realized that Williams was no longer okay. At that point, it was not a matter of Williams being a threat; there was a medical emergency." These facts do not suggest that Pinson believed that Mr. Williams could not breathe, rather, they merely state that Mr. Pinson realized that Mr. Williams was having general, albeit serious, medical problems. Finally, Facts 198-200 (combined) read,

> Chambers wanted Williams sat up at that time to assure an open airway because he
> wanted to be sure that Williams lived. That is because, on August 20, 2005,
> Chambers knew that if subjects like Williams are leaned back and their heads are
> back, they will have an open airway and they can breathe better. Chambers knelt
> on his left knee and leaned Williams back slightly, supporting him against his right
> leg.

The fact that Lieutenant Chambers was taking steps to prevent Mr. Williams from being unable to breathe does not suggest that Lieutenant Chambers thought that Mr. Williams was not breathing at that time. Lieutenant Chambers' precautionary measures do not dispute that no one suspected that Mr. Williams was not breathing until the ambulance and medical personnel arrived.

27.   *Defendants' Fact 248*

Defendants' Fact 248 states, "As of August 20, 2005, state troopers Chambers and Arnold were aware that four members of the Missouri State Highway patrol had been killed since 1988 when hit by vehicles while working along highways, including an incident on August 17, 2005 - three days prior to the day in question. These facts were in the back of the officers' minds during the arrest." This fact was included on pages 20-21 of the Court's Order. Plaintiff argues that this fact is controverted by his Fact 113, which states, "Once the handcuffs were applied, Chambers did not believe that Williams to be [sic] a threat of serious physical injury to Chambers or the public."

The Court again fails to see how Plaintiff's fact disputes any of the statements included in Defendants' fact. The fact that Lieutenant Chambers did not think that Mr. Williams was a serious threat after he was handcuffed and on the ground does not mean that Lieutenant Chambers wasn't thinking about the officers who had lost their lives after being hit by vehicles

along the highway, and about the importance of being careful in order to avoid a similar fate. Thus, the Court rejects Plaintiff's argument.

After reviewing each of Defendants' facts that Plaintiff claims are controverted, the Court believes that it is clear that there are no genuine issues of material fact and that the Court properly granted judgment in favor of Defendants in this case.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Alter or Amend the Court's September 23, 2009 Order [doc. #57] is **DENIED**.

Dated this <u>5th</u> Day of <u>February</u>, 2010.

E. RICHARD WEBBER
UNITED STATES DISTRICT COURT